# ROBERTS v. LEWIS.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE
EIGHTH CIRCUIT.

No. 1044. Submitted April 23, 1894. — Decided May 14, 1894.

Under a will, by which the testator devises and bequeathes to his wife "all my estate, real and personal, of which I may die seized, the same to be and remain hers, with full power, right and authority to dispose of the same as to her shall seem most meet and proper, so long as she shall remain my widow, upon the express condition, however, that if she should marry again, then it is my will that all of the estate herein bequeathed, or whatever may remain, should go to my surviving children, share and share alike," the widow has power during widowhood to convey to third persons an estate in fee simple in his lands.

*Giles* v. *Little*, 104 U. S. 291, overruled; and *Little* v. *Giles*, 25 Nebraska, 313, followed.

This was an action of ejectment, brought June 11, 1887, by Walter F. Lewis against Artemas Roberts, in the Circuit Court of the United States for the District of Nebraska, to recover possession of six lots in the town of South Lincoln, in the county of Lancaster and State of Nebraska. The Circuit Court gave judgment for the plaintiff, and the case was taken by writ of error to the Circuit Court of Appeals for the Eighth Circuit, which certified to this court the following facts:

On May 10, 1869, Jacob Dawson duly made his last will, which was duly admitted to probate in 1869 after his death, and which, omitting the formal parts, was as follows:

"After all my lawful debts are paid and discharged, the residue of my estate, real and personal, I give and bequeath and dispose of as follows, to wit: To my beloved wife, Editha J. Dawson, I give and bequeath all my estate, real and personal, of which I may die seized, the same to be and remain hers, with full power, right and authority to dispose of the same as to her shall seem most meet and proper, so long as she shall remain my widow, upon the express condition, how-

ever, that if she should marry again, then it is my will that all of the estate herein bequeathed, or whatever may remain, should go to my surviving children, share and share alike, and in case any of my children should have deceased leaving issue, then the issue so left to receive the share to which said child would be entitled. I likewise make, constitute and appoint my said wife, Editha J., to be executrix of this my last will and testament, hereby revoking all former wills made by me."

At the time of his death, he had a perfect title to the lots in controversy in this suit. On March 15, 1870, Editha J. Dawson conveyed these lots by warranty deed to Paran England, who, on December 15, 1871, conveyed them by warranty deed to Roberts, the plaintiff in error. On December 14, 1879, Editha J. Dawson married Henry M. Pickering. On September 15, 1879, the children of Jacob Dawson made a warranty deed of these lots to Hiland H. Wheeler and Lionel C. Burr; and Wheeler and Burr afterwards made a warranty deed thereof to Ezekiel Giles, who, in May, 1887, conveyed them by warranty deed to Lewis, the defendant in error.

While the title in these lots was vested in Giles as aforesaid, he brought an action claiming under that title to recover another lot in the same county, which had belonged to Jacob Dawson at the time of his death, against one Little, who claimed under a deed executed by Editha J. Dawson during her widowhood. That case was brought by writ of error to this court, which held at October term, 1881, that under the will of Jacob Dawson his widow only took "an estate for life in the testator's lands, subject to be divested on her ceasing to be his widow, with power to convey her qualified life estate only," and that "her estate in the land and that of her grantees determined on her marriage with Pickering." *Giles* v. *Little*, 104 U. S. 291.

After that decision, but whether before or after the aforesaid deed from Giles to Lewis did not appear, a suit was brought in the district court of Lancaster county by various grantees of the widow against Giles to quiet their title against the title claimed by Giles under the aforesaid deed from the

children of Jacob Dawson; and was taken by appeal to the Supreme Court of Nebraska, which held that the will of Jacob Dawson, under the statutes of the State of Nebraska, enabled his widow, prior to her remarriage, to convey an estate in fee simple in any of the lands whereof her deceased husband had died seized. *Little* v. *Giles,* 25 Nebraska, 313.

Upon these facts, the Circuit Court of Appeals duly certified to this court the following questions or propositions of law :

"First. In determining the nature of the estate that became vested in said Editha J. Dawson under said will of her deceased husband, Jacob Dawson, in and to lands situated in the State of Nebraska, whereof said Jacob Dawson died seized and possessed, should the Circuit Court of Appeals be governed by the decision of the Supreme Court of the United States in *Giles* v. *Little,* 104 U. S. 291, 300, or by the subsequent decision of the Supreme Court of the State of Nebraska in *Little* v. *Giles,* 25 Nebraska, 313, 334 ?

"Second. Did the aforesaid will of Jacob Dawson vest his widow with such an estate in lands whereof the testator died seized, situated in the State of Nebraska, that during her widowhood she could convey to third parties an estate in fee simple therein ?

"Third. Should the construction of the will of Jacob Dawson, deceased, which was adopted by the Supreme Court of the United States in *Giles* v. *Little,* 104 U. S. 291, be adhered to by the United States Circuit Court of Appeals for the Eighth Circuit in determining the right of Walter F. Lewis in and to the property heretofore described, in view of the fact that said Walter F. Lewis purchased said property subsequently to the promulgation of said decision in *Giles* v. *Little,* and prior to the decision of the Supreme Court of the State of Nebraska in the case of *Little* v. *Giles,* 25 Nebraska, 313 ?"

*Mr. N. S. Harwood* and *Mr. John H. Ames* for plaintiff in error.

*Mr. J. M. Woolworth* and *Mr. L. C. Burr* for defendant in error.

The general rule is that the laws of the several States shall be regarded as rules of decision in the Federal courts in cases to which they apply, except where the Constitution, treaties, or statutes of the United States otherwise require or provide. In trials at common law this is prescribed by statute. In suits in equity and admiralty, it has been established by a long course of decisions. It is of equal force and application in all the jurisdictions of the Federal courts.

But stated in these general terms, the rule leaves many interesting questions. One, and a radical one, is what are the laws of the several States which shall be rules of decision in the Federal courts. The cases do not show that this court has ever yielded its judgment to that of a state court when it has deliberately spoken first. The question always being what is the local law, this court always, in obedience to the spirit of the general rule, accepts the exposition of it by the local court, if such exposition has been given. But if this court is, by the exigencies of an orderly litigation, first called on to determine the local law and it does so, it does not yield its judgment to that of a local court afterwards pronounced, save only when, as in all other cases, it becomes satisfied upon its own independent examination that it has fallen into error. *Groves* v. *Slaughter*, 15 Pet. 449; *Rowan* v. *Runnels*, 5 How. 134. In the latter case Chief Justice Taney, after examining the decision in the former case, said: "It now appears, however, that the question has since been brought before the courts of the State, and it has been settled by its highest tribunals that the clause in the constitution above referred to did of itself, and without any legislative enactment, prohibit the introduction of slaves as merchandise and for sale, and render all contracts for the sale of such slaves made after May 1, 1833, illegal and void. And it is argued that inasmuch as this court adopts the construction given by the state courts to their own constitution and laws, we ought to follow the decisions in Mississippi, and declare the case before us to be void, notwithstanding the case of *Groves* v. *Slaughter*. But we are not aware of any decision in this court which presses the rule so far, or that would justify this court in declaring

contracts to be void upon this ground, which, upon the fullest consideration, it has so recently held to be good."

In *Pease* v, *Peck*, 18 How.-595, Mr. Justice Grier, delivering the opinion of the court, discussed somewhat at large this question, and at pages 598, 599, said: "But when this court has first decided a question arising under state laws, we do not feel bound to surrender our convictions, on account of a contrary subsequent decision of a state court, as in the case of *Rowan* v. *Runnels*, 5 How. 139." See also *Morgan* v. *Curtenius*, 20 How. 1.

The case which must always be considered as concluding this question is *Burgess* v. *Seligman*, 107 U. S. 20, 35. It has been cited with approval in every case which has since been before the Federal Supreme Court, and in which, in any of its phases, the question has been presented. The opinion delivered by Mr. Justice Bradley was the unanimous judgment of the court. That great judge brought his best powers to the subject. His examination of the decisions was exhaustive, as is shown by the citation in the margin of almost every previous case; his discrimination was characteristic, and his expressions were as exact and pregnant and strong as in any of his judicial writings.

Upon the point now under discussion the opinion is familiar to the court, and need not be quoted at length. The explication of it concludes with these words: "In the present case, as already observed, when the transaction in question took place, and when the decision of the Circuit Court was rendered, not only was there no settled construction of the statute on the point under consideration, but the Missouri cases referred to arose upon the identical transaction which the Circuit Court was called upon and which we are now called upon to consider. It can hardly be contended that the Federal court was to wait for the state courts to decide the merits of the controversy and then simply register their decision; or that the Circuit Court should be reversed merely because the state court has since adopted a different view. If we could see fair and reasonable ground to acquiesce in that view, we should gladly do so; but in the exercise of that inde-

pendent judgment which it is our duty to apply to the case, we are enforced to a different conclusion. *Pease* v. *Peck*, 18 How. 595, and *Morgan* v. *Curtenius*, 20 How. 1, in which the opinions of the court were delivered by Mr. Justice Grier, are precisely in point."

It would serve no useful purpose to cite other cases to the same effect, or to seek to support by any reasoning what may be now considered one of the institutes of the law. There are cases which are sometimes cited as holding another doctrine, but an examination of their facts will show that they are entirely consistent with the judgments cited above.

The controversy in the case of *Williamson* v. *Suydam*, 20 How. 427, was before the Federal court several times, and an account of it will be useful. In 1802 Mary Clark died seized of the lands in dispute, leaving a will devising the same to Benjamin Moore and his wife, who was the daughter of the testatrix, and Mrs. Maunsell in trust to receive the rents and pay them to Thomas B. Clark, a grandson of the testatrix, during his lifetime, and at his death to his issue then living in fee; and if he died without issue, then to Clement C. Moore in fee. In 1814 the legislature of New York by an act discharged the trustees, on account of their inability to act from infirmity of health and other causes, and empowered the court of chancery to appoint others in their places, who should divide the land into two equal parts, one of which they should hold upon the trusts declared in the will, and to sell the other and invest the proceeds, holding the principal for the same uses and paying the interest to Thomas B. Clark. This measure proving ineffectual for the purposes for which that act was passed, in 1815 another was enacted authorizing him to act as trustee and providing that no sale by him should be effectual without the Chancellor's approval. Afterwards, in that year, Chancellor Kent authorized Clark to sell the eastern moiety. In 1816 another act was passed authorizing Clark, under the Chancellor's order, to mortgage or sell the southern moiety, applying the proceeds for the purposes required by the Chancellor under the former acts. In 1817 the Chancellor made an order accordingly authorizing Clark to convey any

part of the southern moiety in satisfaction of debts, upon a valuation to be made as therein provided. In 1818 Clark conveyed the premises to McIntyre, under whom Suydam held. During this time Clark had infant children. The legislation, and orders mentioned were obtained at his instance, with the consent of all concerned except these infants. In 1826 Clark died, leaving these children. They sought to recover these premises, claiming among other things that the act was unconstitutional, and the Chancellor's orders were void for that reason, and because the orders were unauthorized by these acts. This controversy was first raised in the state courts. The action was ejectment. The lessor of the plaintiff, Moses Field, claimed upon a mortgage made by Clark, and a decree of foreclosure sale and master's deed; the defendant claimed under a lease made by the original trustees. The validity of the acts of the legislature and the orders of the Chancellor was thus drawn in question, and the judgment was for the plaintiff. The case was then taken to the court of errors and is reported under the name of *Sinclair* v. *Jackson*, in 8 Cowen, 543. The court declined to express an opinion upon the validity of the legislation and the judicial proceedings, deciding the case on other grounds. This was in December, 1826.

The next case was *Clark* v. *VanSurlay*, 15 Wend. 436 (1836). This was also an ejectment brought by one of the children of Thomas B. Clark. The defendant claimed under the latter, acting under the acts and orders above mentioned. The Supreme Court held the acts constitutional and valid, and that the children could not question the validity of the Chancellor's orders in ejectment on the ground of excess of authority; and that they not being void, the remedy was in equity or a court of review. The case was then carried to the court of errors, where it is reported under the style of *Cochran* v. *VanSurlay*, in 20 Wend. 365; *S. C.* 32 Am. Dec. 570; (1838,) the original plaintiff having married Cochran. Chancellor Walworth delivered an opinion in favor of affirmance, and Senator Verplanck against the same. Upon the vote seven voted to reverse and twelve to affirm the judgment.

An action in ejectment was then brought in the New York

circuit by Mrs. Williamson, one of the children of Thomas B. Clark, against Barry, who claimed under the legislation and orders and proceedings above mentioned and Clark's action thereunder. The judges were divided in opinion, and the case came to the Supreme Court on certificate made in 1846. Because of the difference between the members of the Court of Errors, that court did not think itself concluded by opinion of the latter, examined the question as an original one, and found that the orders of the Chancellor were without jurisdiction, and that what was done under them was void. The opinion of the court was delivered by Mr. Justice Wayne, in the course of which he said that Judge Bronson, delivering the opinion of the Supreme Court of the State in 15 Wend., said that the acts of the legislature did not give the Chancellor power to make the order; and that this may be gathered from the opinion of Chancellor Walworth in the Court of Error in 20 Wend., and is intimated by Senator Verplanck as his strong impression. And then the learned judge states a point of difference between this court and the state court, and says : "Our conclusion, however, contrary to theirs, will be put upon grounds not suggested when they acted upon this case." The state court had held that a decree in chancery could not be looked into in a collateral way for the purpose of setting aside rights growing out of it. Admitting the rule, it was held that the jurisdiction of any court exercising authority over a subject may be inquired into in every other court.

Afterwards an action was brought in the Superior Court of New York, presenting the same questions, and was carried to the Court of Appeals. *Towle* v. *Forney*, 14 N. Y. 423 (1856). The court, speaking by Denio, C. J., reviewed the judgments reported in 15 Wend. and 20 Wend., and found that they settled the rule and refused to follow the judgment of the Federal court.

The case reported in 8 How. went back for a new trial, which resulted in a judgment for the plaintiff. It was again brought to the Supreme Court, and is reported under the title of *Suydam* v. *Williamson*, 24 How. 427 (1860). Mr. Justice Campbell delivered the opinion. He showed that the state

court held that the rule was settled by the judgments reported
in 15 and 20 Wend., and it was bound to follow them instead
of that of this court. Because the state court had thus settled
the question, he held that under the circumstances this court·
was bound to follow it.

The case came there again, and is reported in 6 Wall., but
what was then ruled is not material here.

In a long series of cases of various circumstances, this court,
in a jealous care of rights derived from contracts, has uni-
formly held that if the state courts have held a certain view
of the law upon which contracts have been made and rights
have been acquired, and afterwards they have changed their
decisions, they will not be followed in the Federal courts, in
cases to enforce those contracts, but the law of the State at
the time those rights were acquired will be rigidly applied.
*Mercer County* v. *Hacket*, 1 Wall. 83; *Gelpcke* v. *Dubuque*, 1
Wall. 175; *Havemeyer* v. *Iowa County*, 3 Wall. 294; *Thom-
son* v. *Lee County*, 3 Wall. 327; *Mitchell* v. *Burlington*, 4 Wall.
270; *Lee County* v. *Rogers*, 7 Wall. 181; *City* v. *Lamson*, 9
Wall. 477; *Olcott* v. *The Supervisors*, 16 Wall. 678; *Douglass*
v. *County of Pike*, 101 U. S. 677; *Thompson* v. *Perrine*, 103
U. S. 806; *S. C.* 106 U. S. 589; *Pleasant Township* v. *Ætna
Ins. Co.*, 138 U. S. 67; *Clark* v. *Bever*, 139 U. S. 96.

Counsel then contended that the construction given to the
will by this court in *Giles* v. *Little*, 104 U. S. 291, was correct;
citing, among other cases, *Smith* v. *Bell*, 6 Pet. 68; *Brant* v.
*Virginia Coal Co.*, 93 U. S. 326.

MR. JUSTICE GRAY, after stating the case, delivered the
opinion of the court.

This certificate distinctly presents for decision the question
(argued, but not decided, when this case was before this court
at a former term, reported in 144 U. S. 653) of the construction
of the will of Jacob Dawson, the material part of which was
as follows:

"To my beloved wife, Editha J. Dawson, I give and be-
queath all my estate, real and personal, of which I may die

seized, the same to be and remain hers, with full power, right and authority to dispose of the same as to her shall seem most meet and proper, so long as she shall remain my widow, upon the express condition, however, that if she should marry again, then it is my will that all of the estate herein bequeathed, or whatever may remain, should go to my surviving children, share and share alike."

By the statutes of Nebraska, "every devise of land in any will hereafter made shall be construed to convey all the estate of the devisor therein, which he could lawfully devise, unless it shall clearly appear by the will that the devisor intended to convey a less estate;" and "the term 'heirs,' or other technical words of inheritance, shall not be necessary to create or convey an estate in fee simple." Nebraska Comp. Stat. c. 23, § 124; c. 73, § 49.

In the opinion delivered by this court in a former case between different parties, and concerning other land, the second of those sections was not referred to, and the first was imperfectly quoted (omitting the word "clearly" before "appear") and was treated as of no weight; and it was held, reversing the decision of Judge McCrary in 2 McCrary, 370, that by the true construction of the will the widow "took under it an estate for life in the testator's lands, subject to be divested on her ceasing to be his widow, with power to convey her qualified life estate only;" and that "her estate in the land and that of her grantees determined on her marriage with Pickering." *Giles* v. *Little*, 104 U. S. 299, 300.

The Supreme Court of Nebraska, in a subsequent case, considered those sections of the statute as controlling the construction of the will, and making it clear that the widow took an estate in fee. *Little* v. *Giles*, 25 Nebraska, 321, 322. That court was also of opinion that the gift over to the children passed only that portion of the estate, real or personal, not disposed of by the widow during her widowhood; and upon the whole case concluded "that the intention of the testator was to empower his widow to convey all of his real and personal estate, if she saw fit to do so, and, as she had exercised this right and power before her remarriage, the

grantees under her deeds acquired all the title of the testator to such lands." 25 Nebraska, 327, 328, 334.

The opinion of the Supreme Court of the State appears to have been formed upon full consideration of the difficulties of the case; and is entitled to great weight, especially upon the construction of the statute of the State. *Suydam* v. *Williamson*, 24 How. 427. And this court, on reconsideration of the whole matter, with the aid of the various judicial opinions upon the subject, and of the learned briefs of counsel, is of opinion that the sound construction of this will, as to the extent of the power conferred on the widow, is in accordance with the conclusion of the state court, and not with the former decision of this court, which must, therefore, be considered as overruled.

The testator's primary object manifestly was to provide for his widow. He begins by giving her " all my estate, real and personal," which of itself would carry a fee, unless restricted by other words. *Lambert* v. *Paine*, 3 Cranch, 97. He then says "to be and remain hers," which, upon any possible construction, secures to her the full use and enjoyment of the estate, while she holds it. She is also vested, in the most comprehensive terms, " with full power, right and authority to dispose of the same " (which, as no less title has yet been mentioned, naturally means the whole estate) " as to her shall seem most meet and proper, so long as she shall remain my widow." This last clause, so far as it controls the previous words, has full effect if construed as limiting the time during which the widow may have the use and enjoyment of the estate, and the power to dispose of it, and not restricting the subject to be disposed of. The power thus conferred, therefore, in its own terms, as well as by the general intent of the testator, gives her during widowhood the right to sell and convey an absolute title in any part of the estate; for it would be difficult, if not impossible, to obtain an adequate price for a title liable to be defeated in the hands of the purchaser by the widow's marrying again.

That the power was intended to be unlimited in this respect appears, even more distinctly, by the terms of the next clause,

by which, if she should marry again, the testator declares. it to be his will that "all of the estate herein bequeathed, or whatever may remain, should go" to his surviving children. By not using the technical word "remainder," or making the devise over include the entire estate at all events, but carefully adding, after the words "all the estate herein bequeathed," the alternative "or whatever may remain" (which would otherwise have no meaning) he clearly manifests his intention to restrict the estate given to the children to whatever has not been disposed of by the widow; and there is nothing upon the face of the will, nor are there any extrinsic facts in this record, having any tendency to show that the power of the widow is less absolute over the real estate than over the personal property.

The cases of *Smith* v. *Bell*, 6 Pet. 68, and *Brant* v. *Virginia Coal Co.*, 93 U. S. 326, relied on in support of the opposite conclusion, involved the construction of wills expressed in different language from that now before the court.

In *Smith* v. *Bell*, the testator bequeathed "all his personal estate," consisting principally of slaves, to his wife, "to and for her own use and benefit and disposal absolutely, the remainder of said estate, after her decease, to be for the use of" his son; and the decision was that the wife took a life estate only, and the son a vested remainder. The wife had made no conveyance of the property; the words of the gift over were the technical ones "the remainder of my estate," appropriately designating the whole estate after the wife's death; and the court distinctly intimated that, if the will were construed as giving the wife "the power to sell or consume the whole personal estate during her life," a gift over of "what remains at her death" would be "totally incompatible" and "void for uncertainty." 6 Pet. 78. But in the case at bar, the gift over is in express terms of "whatever may remain." If the intent expressed by these words can be carried out, the children take only what has not been disposed of. If the clause containing them is repugnant and void, the view of the Supreme Court of Nebraska that the widow took an estate in fee is fortified. See *Howard* v. *Carusi*, 109 U. S. 725; *Potter* v. *Couch*, 141 U. S. 296, 315, 316.

In *Brant* v. *Virginia Coal Co.*, the bequest which was held to give a life estate, and no power to convey a fee, was only of the testator's estate, real and personal, to his wife, " to have and to hold during her life, and to do with as she sees proper. before her death." 93 U. S. 327.

The numerous cases cited in the briefs have been examined, and show that the general current of authority in other courts is in favor of our present conclusion ; but, as they largely depend upon the phraseology of particular wills, it would serve no useful purpose to discuss them in detail.

It is unnecessary to express a positive opinion upon the question whether, under this will, the widow took an estate in fee ; for if she took a less estate with power to convey in fee, the result of the case, and the answers to the questions certified, must be the same as if she took an estate in fee herself.

For the reasons above stated, this court is of opinion that the will of Jacob Dawson did give his widow such an estate in lands in Nebraska of which he died seized, that she could during her widowhood convey to third persons an estate in fee simple therein ; and that the Circuit Court of Appeals, in determining the nature of the estate vested in her by the will in such lands, should be governed, not by the former decision of this court in *Giles* v. *Little*, 104 U. S. 291, but by the decision of the Supreme Court of Nebraska in *Little* v. *Giles*, 25 Nebraska, 313.

The result is, that the first question certified must be answered accordingly ; that the second question must be answered in the affirmative; and that the third question must be answered in the negative; and that these answers be

*Certified to the Circuit Court of Appeals.*