# MONTGOMERY *v.* BROWN.

---

### WILLS.

1. The estate of one having a life interest only in money derived from an insurance policy bequeathed under a will is answerable to the remainderman for the amount of the money received by the life tenant.
2. The first and great rule in the exposition of wills, to which all others must bend, is that the intention of the testator, expressed in his will, shall prevail provided it be consistent with the rules of law; and the whole will is to be taken together and construed so as to give effect, if possible, to the whole.
3. Provisions in a will for the benefit of the testator's wife should be construed liberally in her favor.

4. When an interest is given or an estate devised in one clause of a will, it cannot be cut down or taken away by raising a doubt from other clauses, but only by express words or by clear and undoubted implication.

5. Where a will devising the testator's real estate to his wife for life, with power to mortgage should her circumstances become such as to justify it, without any limitation bequeaths to her his life insurance and all other property not otherwise disposed of by the will, and then, after two specific bequests, concludes with a clause providing that at the death of the widow all of the testator's property—real, personal, and mixed—should revert to his brother and his heirs,—the widow takes the insurance money absolutely, and not for life only.

6. Where the absolute power of disposal is given in express and unequivocal terms, or clearly and unmistakably implied, to the first taker under a will, a remainder over is void. (Following *Holcomb* v. *Wright*, 5 App. D. C. 76.)

No. 1509.  Submitted April 14, 1905.  Decided May 2, 1905.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia in a suit in equity for the construction of a will.                    *Affirmed.*

The COURT in the opinion stated the case as follows:

This is an appeal taken from a decree entered in the court below in favor of the appellees, Richard H. Brown and Cora L. Peters, who were the defendants below.  The question involved in the suit was as to the proper construction and interpretation of a will executed by Henry P. Montgomery, deceased, a brother of the complainant, Winfield Scott Montgomery.  Should the will be construed according to the contention of the complainant, specific relief is asked relative to certain notes and securities.

The record discloses that Henry P. Montgomery, a resident of the District of Columbia, died April 26, 1899, leaving a will dated December 1, 1898.  The will devised to Emma V. Montgomery, his wife, all his real estate during her life, with power to mortgage should her circumstances become such as to justify it.  Certain specific bequests were made, one of which was re-

voked by a codicil, which codicil also contained a bequest of certain other personal property. In addition thereto, the will contained two clauses, which are the ones to be construed. They are as follows:

"I also bequeath to my wife, Emma V. Montgomery, my life insurance and all other property, not otherwise disposed of by this will. * * *

"At the death of my wife, Emma V. Montgomery, all my property—real, personal, and mixed—shall revert to my brother, Winfield Scott Montgomery, and his heirs forever."

Emma V. Montgomery and Winfield Scott Montgomery were appointed executors, the will was probated in June, 1899, and the executors qualified. They collected the life insurance money, amounting to $5,000, which was taken by Emma V. Montgomery, who deposited $4,800 of the amount, in her name, in certain Washington trust companies. Emma V. Montgomery died October 26, 1902, intestate, leaving as her heirs at law and next of kin, the defendants, her brother and sister. Richard H. Brown, one of the appellees, was appointed administrator of the estate of Emma V. Montgomery, in December, 1902. The inventory and appraisal of her personal estate, as filed, disclosed that such estate amounted to about $7,000. Among the items were three notes amounting in the aggregate to $4,500, secured by deeds of trust, which are the notes asserted to have been bought with the life insurance money. It appears that the appellant, while Richard H. Brown's petition for appointment as administrator of the estate of Mrs. Montgomery was pending, filed an intervening petition asserting that these notes were purchased with the life insurance money and that they, as well as all other personal property which Mrs. Montgomery received under the will of her husband, passed at her death to this appellant.

*Mr. S. R. Bond* and *Messrs. Cole & Donaldson* for the appellant.

*Mr. Henry E. Davis* and *Mr. Harry Smith* for the appellees.

Mr. Justice Duell delivered the opinion of the Court:

This state of facts presents for consideration two questions:

The first is as to whether the insurance money was invested in the notes referred to; and, while we agree with the court below in the finding that the notes were purchased with the money received from the life insurance, it is, in our opinion, of little consequence, for the reason that if Mrs. Montgomery only took a life interest in the insurance money, her estate would, in any event, be answerable for the full amount.

The second question is the important one, and that is as to whether Emma V. Montgomery's interest in the insurance money was absolute, or only a life interest therein.

The general rule as to the construction of wills is, at this day, well established, and is not open to question. It is the rule laid down in *Smith* v. *Bell,* 6 Pet. 68, 8 L. ed. 322, where it is stated:

"The first and great rule in the exposition of wills, to which all others must bend, is that the intention of the testator, expressed in his will, shall prevail, provided it be consistent with the rules of law,   *   *   *   the whole will is to be taken together, and is to be so construed so as to give effect, if it is possible, to the whole."

Turning now to the consideration of the will, we find that Henry P. Montgomery gave to his wife the real estate during her life, with power to mortgage should her circumstances become such as to justify it.   The next paragraph, without any limitation or qualifying cl-use, bequeaths to her his life insurance and all other property not otherwise disposed of by his will.   Standing by itself, this bequest is clear, and expresses in apt terms and without the slightest ambiguity an absolute bequest of the life insurance money to the widow.   Then the will sets forth two specific bequests, followed by the clause which has led to this controversy.   This clause provides that at the death of Emma V. Montgomery, the widow, all of the decedent's property—real, personal, and mixed—shall revert to his brother, Winfield Scott Montgomery, and his heirs forever.   A reading of the will clearly shows that it was the intention of the

testator to provide for his wife a home, and, according to the measure of his means, an ample maintenance. To that end he gave not only a life interest in all of his real estate during her life, but gave her the power to mortgage the same should circumstances justify it. He also gave her his life insurance without any words of limitation. Had he intended to give her only a life interest in it, or only so much of it as might be necessary for her maintenance, it would have been natural for him to so state and to have qualified the bequest as he had limited her interest in his real estate in the preceding clause of the will. As we have stated, the will disclosing that the intent of the testator was to make ample provision for his wife, the rule laid down by the court of appeals of New York, in *Moffett* v. *Elmendorf,* 152 N. Y. 475, 57 Am. St. Rep. 529, 46 N. E. 845, that provisions for the benefit of the wife should be construed liberally in her favor, may be well invoked in the case at bar.

But it is insisted on behalf of the appellant that the clause providing for the reversion of all of the testator's property to him at the death of Emma V. Montgomery is clear, should be construed as it reads, and not in such a way as to deprive the testator's brother of the interest given him by the clause. There can be no question but that, notwithstanding the terms in one clause of a will denote an absolute estate, by a subsequent clause such an interest may be qualified by a limitation over in a certain event, or that it may be cut down; but as the New York court of appeals, in *Freeman* v. *Coit,* 96 N. Y. 63, in recognizing such rule, said: "There is another rule of construction of equal force, and not inconsistent with the one just stated, and that is that when an interest is given or an estate conveyed in one clause of an instrument, it cannot be cut down or taken away by raising a doubt from other clauses, but only by express words or by clear and undoubted implication,"—citing *Thornhill* v. *Hall,* 2 Clark & F. 22, and *Roseboom* v. *Roseboom,* 81 N. Y. 356. The reversion clause, in our opinion, is not so clear but that it requires construction and limitation. If the expression "all of my property—real, personal, and mixed"—is to be construed sufficiently broad to sweep within its terms all of the property

held by the testator at his death, then it would apply with just
as much force to the two specific bequests to Richard B. Peters
and Musette Brooks as to the specific bequest of the life insur-
ance to Emma V. Montgomery. A construction as broad as
that would, we think, be unwarranted, and yet it would be doing
violence to the rule requiring a liberal construction of a pro-
vision for the benefit of the widow, to hold that the reversion
clause related to her specific bequest, and not to other specific
bequests contained in the will. It is true that the bequest to
Peters was revoked by the codicil, but that does not alter the
principle. We think it a fair construction to say that the re-
version clause was set forth broadly so as to embrace the tes-
tator's property, which was not specifically bequeathed, in
whatsoever form that property might be at the time of the death
of Mrs. Montgomery. For illustration: she was given power
to mortgage the real estate, and, if that power had been exer-
cised only a short time before her death, there undoubtedly
would have been a considerable part of the amount of the mort-
gage money in her hands at the time of her death, which money
would revert to Winfield Scott Montgomery under the reversion
clause, as it would not had that clause only provided for the re-
version of his real estate.

The learned justice in the court below, in reviewing the facts
of the case and law applicable thereto, said:

"In the case of *Howard* v. *Carusi,* 109 U. S. 725, 27 L. ed.
1089, 3 Sup. Ct. Rep. 515, involving a devise of real estate and
bequest of personal property to the brother of the testator to be
held, used, and enjoyed by him, his heirs, executors, ad-
ministrators, and assigns forever, with the hope and trust, how-
ever, that he would not diminish the same to a greater extent
than may be necessary for his comfortable support and main-
tenance, and that, at his death, the same, or so much thereof as
he should not have disposed of by devise or sale, should descend
to the testator's three nieces, it was held by the Supreme Court
of the United States that, inasmuch as the absolute power of
disposal was given in express and unequivocal terms, or clearly
and unmistakably implied, to the first taker, the remainder over

was void.    See also the cases of *Wright* v. *Holcomb,* 5 App. D.
C. 76; *Smith* v. *Bell,* 6 Pet. 68, 8 L. ed. 322; *Brant* v. *Virginia
Coal & I. Co.* 93 U. S. 326, 23 L. ed. 927; *Potter* v. *Couch,*
141 U. S. 316, 35 L. ed. 732, 11 Sup. Ct. Rep. 1005, and
*Roberts* v. *Lewis,* 153 U. S. 367, 38 L. ed. 747, 14 Sup. Ct.
Rep. 945.

"In the case at bar, the testator evidently intended that his
widow should not be limited or embarrassed in any way in re-
spect of this insurance money which he wished her to have.    It
would be most unusual, indeed, for a testator in disposing of his
life insurance policy, which he doubtless, and quite naturally,
procured in order to insure support for his wife in the event of
his own prior death, to say to his wife that he did not mean that
she should use the insurance money, but only that she should in-
vest it and use the income; and, in the absence of an express
declaration by the testator that he intended such an unusual dis-
position, the court would hardly be justified in holding such to
have been his intention.

"The clause of the will upon which the complainant relies—
namely, 'At the death of my wife, Emma V. Montgomery, all
of my property— real, personal, and mixed—shall revert to my
brother, Winfield Scott Montgomery, and his heirs forever'—is
in the nature simply of a residuary disposition.    The clause
was necessary in order to dispose of the fee to the real estate in
which he had simply vested the widow with a life estate, but
beyond this it is only to be treated as a general clause.    The
testator's first wish was to see to it that his wife should be
properly cared for, and after that he looked directly to his
brother.    After his wife, whatever was to be disposed of, he
wanted to go to his brother; and, in order to insure this, he made
use of the broad, generic, and comprehensive expression 'all of
my property,—real, personal, and mixed,'—as best adapted to
provide for all possible contingencies; and it is not improbable
that he found this stereotyped expression in some printed form
or draft of will, and regarded it as an approved residuary one
with no special meaning to him, but simply adapted to carry
out his general idea that, after his wife had thus been provided

for, whatever of his estate remained undisposed of he wanted to go to his brother. And, under this clause, it would seem quite clear that not only would his brother take the fee to the real estate, but also that, had the testator's wife not survived the testator, all of the property—real, personal, and mixed—would have gone to the brother."

We agree with his views thus expressed and believe that the proper construction was placed upon the will by the trial court. No reversible error has been shown. It follows that the decree should be affirmed, with costs, and it is so ordered. *Affirmed.*