BILGER v. NUNAN et al. FITCH v. NUNAN. KAHLER v. SAME. HUGHES v. SAME.

(Circuit Court, D. Oregon. April 28, 1911.)

No. 3,612.

WILLS (§ 616*)—CONSTRUCTION—ESTATE DEVISED—AUTHORITY TO MORTGAGE— "HAVE, HOLD, USE AND DISPOSE OF AS SHE MAY SEE FIT DURING HER LIFE"—"TO HAVE AND TO HOLD."

Testator bequeathed all his property, real and personal, to his wife, to have, hold, use, and dispose of as she might see fit during her life, giving to her full power and authority to sell, convey, and transfer all or any part of the same, fully and absolutely, so as to pass complete title to purchasers or grantees from her, and that whatever of such property or its proceeds remained in her hands at her death should go to their daughters. *Held*, that though the words "to have and to hold," if standing alone, in connection with the words "during her life," would be effective to qualify the estate devised so as to vest the widow with a life estate only, yet when coupled with the words "use" and "dispose of" as she might see fit, they indicated that the whole title was intended for the widow's use and disposition, and hence the will conferred on her full authority to sell or mortgage the fee, under B. & C. Comp. §§ 5336, 5573, providing that a devise of real property shall be taken as a devise of all

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the testator's interest subject to his disposal, unless it clearly appeared from the will that he intended to devise a lesser estate.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1418–1430; Dec. Dig. § 616.*

For other definitions, see Words and Phrases, vol. 4, pp. 3217–3219; vol. 8, p. 6990.]

Actions by Sallie Bilger, Fitch, Kahler, and Hughes against Jeremiah Nunan and others. Judgments for defendants.

W. E. Crews, W. W. Cardwell, and J. E. Fenton, for plaintiffs.
John M. Gearin and H. D. Norton, for defendants.

WOLVERTON, District Judge. This is an action in ejectment to recover possession of an undivided one-sixth interest in and to a tract of land in Jackson county, Or., containing 292 acres. Plaintiff is the daughter of James A. Cardwell, deceased, and claims title under a will executed by him February 18, 1890. The defendant Jeremiah Nunan claims title by virtue of a sheriff's deed executed in pursuance of a decree and order of sale obtained under the foreclosure of a mortgage executed by Caroline Cardwell, the widow of James A. Cardwell, upon the real property in controversy.

The paramount question presented for consideration is whether the widow could legally mortgage the estate of decedent under the proper construction of the will, being the same as that under which the plaintiff claims title. The will is in language following:

"I give, devise and bequeath to my wife Caroline Cardwell all my property and estate, both real and personal, of every kind of which I shall die possessed, to have, hold, use and dispose of as she may see fit during her life, hereby giving her full power and authority to sell, convey, deed and transfer all or any part of said property fully and absolutely so as to pass complete title to purchasers or grantees from her as she may see fit.

"And it is my will that whatever of my said property and the proceeds thereof which remains in the hands of said Caroline Cardwell at her death shall go to our daughters hereinafter named.

"On account of our daughter Medora L. Berry and her husband having heretofore left some property with me which entitles her to more of my estate than the others, it is my will that she shall receive out of what remains undisposed of at the death of my wife, the sum of Two Hundred and Fifty Dollars, and the rest of whatever so remains shall be divided equally among my daughters Medora L. Berry, Maria Kahler, Sallie Bilger, Della Fink, Rose Cardwell and Laura Cardwell, share and share alike.

"And inasmuch as my sons Alvin B. Cardwell, C. D. Cardwell and Wm. W. Cardwell have already received advancements and pecuniary assistance from me equal to their shares of my estate, they are not to receive any portion of my estate under this will."

The question depends upon what estate the widow took under the will, and what power or authority was accorded to her for disposing of the estate.

The authorities are in much conflict as it respects the construction of bequests similarly worded, and not a great deal of light can be thrown upon the subject by an elaborate review of them. Much depends upon the wording peculiar to the particular will, viewed from the standpoint of the special circumstances and conditions under which it was executed so as to ascertain the purpose and intent of the testator as

nearly as may be. So also the local statutes may have an important bearing.

Under the statute of Oregon the employment of the term "heirs" is not necessary to create an estate in fee simple, and it is further provided that:

"A devise of real property shall be deemed and taken as a devise of all the estate or interest of the testator therein subject to his disposal, unless it clearly appears from the will that he intended to devise a less estate or interest." Sections 5336, 5573, B. & C. Comp.

This changes the rule of the common law, which was that only a life estate was intended to be devised, unless words of inheritance or words of like import were used. Little et al. v. Giles et al., 25 Neb. 313, 41 N. W. 186, 188. One rule is the complete antithesis of the other, and the presumption following is the opposite.

In view of the premises, I consider the case of Roberts v. Lewis, 153 U. S. 367, 14 Sup. Ct. 945, 38 L. Ed. 747, controlling here. It involved the construction of the will of Jacob Dawson in language following:

"To my beloved wife, Editha J. Dawson, I give and bequeath all my estate, real and personal, of which I may die seized, the same to be and remain hers, with full power, right and authority to dispose of the same as to her shall seem most meet and proper, so long as she shall remain my widow, upon the express condition, however, that if she should marry again, then it is my will that all of the estate herein bequeathed, or whatever may remain, should go to my surviving children, share and share alike."

A case involving a construction of the same will, but between different parties, was formerly before the Supreme Court, in which it was held that the wife took a life estate only in the property, subject to termination by her second marriage, with a limitation over to the children of the testator, following Smith v. Bell, 6 Pet. 68, 8 L. Ed. 322; Giles v. Little, 104 U. S. 291, 26 L. Ed. 745. Later another case arose in Nebraska under the title of Little et al. v. Giles et al., above cited, which was a suit to quiet title. The will again came up for construction, and it was there held that, under the statutes of the state, a conveyance of the real estate by the widow before her remarriage conveyed the fee of such realty, and her subsequent marriage did not affect the title to the same, the court concluding in the following language:

"There is no doubt, both from the will itself, and from the circumstances as proved under which it was made, that the intention of the testator was to empower his widow to convey all of his real and personal estate if she saw fit to do so, and, as she had exercised this right and power before her remarriage, the grantees under her deeds acquired all the title of the testator to such lands."

The Nebraska statutes, which seem to control the decision, are in effect the same as the Oregon statutes above cited. It was after this decision that the case of Roberts v. Lewis, supra, went to the Supreme Court. The case of Giles v. Little was reconsidered, and in an opinion rendered by Mr. Justice Gray it was said:

"And this court, on reconsideration of the whole matter, with the aid of the various judicial opinions upon the subject, and of the learned briefs of counsel, is of opinion that the sound construction of this will, as to the extent

of the power conferred on the widow, is in accordance with the conclusion of the state court, and not with the former decision of this court, which must therefore be considered as overruled."

The will of Dawson is so similar in its disposition of the estate to the one in controversy that the reasoning of the distinguished jurist is singularly to the purpose here. The devise here is of all the testator's property, both real and personal, of which he should die possessed, which without more would carry the fee. Then follow the words "To have, hold, use and dispose of as she may see fit during her life." This language is as well consonant with the idea of a fee. The words "To have and to hold," if standing alone, by connection with the words "during her life," would be effective to qualify the estate devised, and make of it a life estate; but when coupled with the words "use and dispose of as she may see fit"—that is, the "property and estate, both real and personal"—they indicate that the whole title was intended for her use and disposition, and especially is this so when the language following is considered, namely:

"Hereby giving her full power and authority to sell, convey, deed and transfer all or any part of said property fully and absolutely so as to pass complete title to purchasers or grantees from her as she may see fit."

Could language be more apt and explicit for empowering the widow to dispose of the entire estate as she saw fit or was disposed? I place but little stress upon the words "from her." Whatever transfer or conveyance she might make would be from her, and so the title would pass from her, the same as if the testator had made it himself. This view is borne out by the succeeding clause, declaring that "whatever of my said property and the proceeds thereof which remains in the hands of said Caroline Cardwell at her death shall go to our daughters," which bears the impress of a power of absolute disposition resting with the widow. It implies that property may remain in her hands, and that the proceeds of property might so remain, and this could not be without she had the power of disposal of such as was not left in her hands. Nor is the technical word "remainder" used, as was the case in the will construed in Smith v. Bell, and which had a strong bearing in inducing the conclusion there reached. The clauses following these are perfectly natural under the idea of absolute power of disposal by the widow, and it would be only the property that remains in her hands that would be distributed as therein directed. I am persuaded, therefore, that the case of Roberts v. Lewis, supra, is controlling here. Many state adjudications are to the same purpose. In re Will of Burbank, 69 Iowa, 378, 28 N. W. 648; Pellizzarro v. Reppert, 83 Iowa, 497, 50 N. W. 19; In re Weien's Will, 139 Iowa, 657, 116 N. W. 791, 18 L. R. A. (N. S.) 463; Bowen's Adm'r et al. v. Bowen's Adm'r et al., 87 Va. 438, 12 S. E. 885, 24 Am. St. Rep. 664; Farish et al. v. Wayman et al., 91 Va. 430, 21 S. E. 810; Hansbrough v. Trustees of Presbyterian Church, 110 Va. 15, 65 S. E. 467; Todd v. Sawyer, 147 Mass. 570, 17 N. E. 527; Hair v. Caldwell, 109 Tenn. 148, 70 S. W. 610. See, also, Elyton Land Co. v. McElrath, 53 Fed. 763.

In my opinion, therefore, Caroline Cardwell was accorded the power of disposal of the absolute fee of this property, which is sufficient for the present controversy; and, as the greater authority includes the less, she was also empowered to mortgage the same. The foreclosure therefore and sale thereunder, together with the deed of the sheriff, carried the title to the defendant.

A question was suggested as to whether the heirs should have been made parties to the foreclosure suit, but as the suit was instituted and concluded in the lifetime of Caroline Cardwell, and the sheriff's deed passed, I do not deem that they were indispensable parties thereto.

The same ruling will obtain in the cases of Fitch v. Nunan, Kahler v. Nunan, and Hughes v. Nunan.