## GILES v. LITTLE.

A.'s last will and testament provides as follows: "To my beloved wife E. I give and bequeath all my estate, real and personal, of which I may die seised, the same to remain and be hers, with full power, right, and authority to dispose of the same as to her shall seem meet and proper, so long as she shall remain my widow, upon the express condition that if she shall marry again, then it is my will that all of the estate herein bequeathed, or whatever may remain, should go to my surviving children, share and share alike." A.'s children and E. survived him. She conveyed the real estate to B. in fee, and subsequently married. *Held*, that B.'s estate determined on E.'s marriage.

ERROR to the Circuit Court of the United States for the District of Nebraska.

This was an action for the recovery of lot No. 6, in block 54, in the city of Lincoln, Nebraska.

The following are the material averments of the petition : —

" On June 10, 1869, and thence up to his death, Jacob Dawson was seised and possessed of divers real and personal estates of great value, and had a wife named Edith J., and six children who were on said day minors, and some very young, and all without any property whatever, his wife being seised and possessed in her own right of real and personal estates of the value of ten thousand dollars and over.

" On said day the said Jacob made his last will and testament, which contained the following sole bequest: After all my lawful debts are paid and discharged, the residue of my estate, real and personal, I give, bequeath, and dispose of as follows, to wit: To my beloved wife Edith J. Dawson I give and bequeath all my estate, real and personal, of which I may die seised, the same to remain and be hers, with full power, right, and authority to dispose of the same, as to her shall seem meet and proper, so long as she shall remain my widow; upon the express condition, that, if she shall marry again, then it is my will that all of the estate herein bequeathed, or whatever may remain, should go to my surviving children, share and share alike; and in case any of my children should have deceased, leaving issue, then the issue so left to receive the share to which said child would be entitled. I likewise make, constitute, and appoint my said wife Edith J. to be executrix of this my last will and testament.

" On the twenty-second day of June, 1869, the said Jacob died at Lancaster County in this district, leaving him surviving his said wife and six children. The said will was duly proved and admitted to probate in the proper court of said county, and letters testamentary thereon were issued out of said court to the said Edith J., who took upon her the execution of said trust.

" The personal property, whereof the said Jacob died possessed, was duly inventoried and appraised at $958.; and among the real estates whereof, at his death, the said Jacob was seised, was that certain piece or parcel of land known and described as follows: Lot number 6, in block 54, in the city of Lincoln, in said Lancaster County, except six inches off the entire east line of said lot, which supports the east party-wall of said lot; which lot is of the value of $5,000 and over.

" On the twenty-seventh day of April, 1870, the said Edith J., by her certain deed of conveyance, dated on said day, and duly executed and acknowledged, conveyed the said premises to one Cody, by warranty deed, which contained no reference to nor recited the power in said will, and by divers mesne conveyances from said Cody, the said defendant Little claims and pretends that he is seised in fee of said premises; and

he is now in possession thereof by the defendant May, as his tenant.

" On or about the fifteenth day of November, 1879, the said Edith J. intermarried with one Pickering.

" One of the said children of the said Jacob died intestate without issue, and the survivors being in indigent circumstances have joined in a conveyance of the said premises, bearing date Sept. 15, 1869, and duly executed and acknowledged, whereby they conveyed the same in fee to one Burr and one Wheeler, who by their deed have duly conveyed the same to the plaintiff. And by reason of the premises the said plaintiff has become and is seised in fee of said premises above described, and is entitled to the immediate possession thereof; the defendant Little, under the alleged title derived to him as aforesaid, unlawfully keeps the said plaintiff out of possession thereof."

There was a general demurrer to this petition, which the Circuit Court sustained, and gave judgment for the defendants.

This action of the court is assigned for error.

*Mr. James M. Woolworth* for the plaintiff in error.

*Mr. T. M. Marquett, contra.*

MR. JUSTICE WOODS, after stating the case, delivered the opinion of the court.

The contention of the plaintiff in error is, that Edith J. Dawson took, under the will of her deceased husband, Jacob Dawson, an estate for life, subject to be determined in case she contracted another marriage, with remainder to the heirs of Jacob Dawson; and that the power of disposal conferred on her by the will was only coextensive with the estate which she took under the will, — that is to say, the power was granted her to dispose of her life-estate, and, consequently, that the estate conveyed by her deed to Cody determined upon her marriage with Pickering.

It was said by this court in *Clarke v. Boorman's Executors*. (18 Wall. 493), Mr. Justice Miller delivering its opinion, that " of all legal instruments wills are the most inartificial, the least to be governed in their construction by the settled use of

legal technical terms, the will itself being often the production of persons not only ignorant of law, but of the correct use of the language in which it is written. Under the state of the science of law as applicable to the construction of wills, it may well be doubted if any other source of enlightenment in the construction of a will is of as much assistance as the application of natural reason to the language of the instrument, under the light which may be thrown upon the intent of the testator by the extrinsic circumstances surrounding its execution, and connecting the parties and the property devised with the testator and with the instrument itself."

If we apply the methods thus indicated to the construction of the will of Jacob Dawson, there can, it seems to us, be no serious doubt about its meaning.

According to the averments of the petition, it appears that twelve days before his death Dawson executed his last will. At that time he was the owner of some real estate, and of personal property of the value of $958. He was the father of six living children, all of whom were minors, some of them very young, and all without any property in their own right. His wife, Edith J. Dawson, was the owner of real and personal property to the amount of $10,000 or more.

The promptings of natural affection would lead a testator so situated to provide in his will not only for his wife, but also for his infant children.

The disposition of his property is made by a single sentence in his will. It seems clear that his purpose was to give to his wife an estate for life in his property, subject to be divested on her contracting a second marriage, and on the determination of her interest, either by her death or marriage, then an estate in fee to his children. No man unversed in technical rules of construction can, it seems to us, read this will without coming to this conclusion. To hold otherwise would be to suppose the testator, in drafting his will, was governed by abstruse rules of law in regard to the effect of his expressions, of which, it is probable, he never heard, and had not the slightest conception.

The clause of the will which disposes of the testator's entire estate provides first for the payment of his lawful debts. The residue of his estate (after payment of debts) is then disposed

. of as follows: "·To my beloved wife .Edith J. Dawson I give
and bequeath all my estate, real and personal, of which I may
die·seised, the same to remain and be hers, with full power,
right, and authority to dispose of the same as to her shall seem
meet and proper so long as she shall remain my widow." This
part of the disposing clause of the will is not open to doubt.
·The phrase, " so long as she shall remain my widow," refers
to and qualifies the estate granted, as well as the power of
disposition. The clear and undoubted meaning of the sen-
tence is, that as long as the devisee remains the widow of the
testator, his·property, real and personal, shall remain and be
hers, with full power to dispose of the same. This construc-
tion, so far as it concerns the estate granted, is so obvious
that no discussion can make it any plainer. How large an
estate, the widow was empowered to dispose of will be con-
·sidered hereafter.

But the testator, not satisfied with this unequivocal declara-
tion of his purpose, and to leave no doubt of his intention, and to
give direction to his property when the estate of his wife there-
in should determine, proceeds to add : " Upon the express condi-
tion that if she shall marry again, then it is my will that all of
the estate herein bequeathed, or whatever may remain, should
[shall] go to my surviving children, share and share alike."

It would be hard to express more clearly the purpose of the
·testator to devise to his wife an estate during her widowhood,
and on its determination a remainder in fee to his children.

The contention, however, of the defendants in error is, that
the testator by this will gave to his wife an absolute estate in
fee-simple, with power, so long as she remained his widow, to
·dispose of it absolutely.

We find no warrant for this construction of the will, either
in its terms or in the circumstances which surrounded the tes-
tator. The language is plain that the devisee was to take a
life-estate, subject to be determined on her second marriage,
with a limitation over to the children of the testator. His
purpose was clearly expressed, to provide for his children as
well as his widow, to give the latter all his estate as long as she
remained his widow, but to put it out of her power to dis-
inherit his children. According to the construction of the

defendants in error, the will gave her the power of absolute disposition during her widowhood, so that she could by her conveyance entirely divert the estate from his children; and, having done this, could contract a second marriage without the loss of any interest in the proceeds of the property devised to her by the testator.

We think it was not the purpose of the testator to devise an estate in fee to his wife. As already remarked, the devise is limited by the words " so long as she shall remain my widow." But even if these words were wanting, the limitation over to his children in case she should marry again would control and restrict the preceding words by which the estate was granted.

*Smith* v. *Bell* (6 Pet. 68) is in point. The will construed in that case declares: " I give to my wife Elizabeth Goodwin all my personal estate, whatsoever and wheresoever, and of what nature, kind, and quality soever, after payment of my debts, legacies, and funeral expenses, which personal estate I give and bequeath unto my said wife, Elizabeth Goodwin, to and for her own use and benefit and disposal absolutely, the remainder of said estate, after her decease, to be for the use of said Jesse Goodwin," son of the testator; " and I do hereby constitute and appoint my said wife, Elizabeth Goodwin, sole executrix of this my last will and testament."

The court held that this was a devise to the testator's wife for life, with remainder to Jesse Goodwin. Mr. Chief Justice Marshall, in delivering its opinion, said: "It must be admitted that words could not have been employed which would be better fitted to give the whole personal estate absolutely to the wife, or which would more clearly express that intention. But the testator proceeds: 'The remainder of said estate to be for the use of the said Jesse Goodwin.' These words give the remainder of the estate, after his wife's decease, to the son, with as much clearness as the preceding words give the whole estate to his wife. They manifest the intention of the testator to make a future provision for his son as clearly as the first part of the bequest manifests his intention to make an immediate provision for his wife. . . . The limitation in remainder shows that, in the opinion of the testator, the previous words had given only an estate for life. This was the sense in which he used them."

This case establishes conclusively the contention of plaintiff in error, that the words of the will under consideration, granting an estate to the wife, grant only an estate for life, and not an estate in fee-simple.

But it is contended by defendants in error that there are words in the last clause of the will which imply an absolute power of disposition, and give to the children only what may remain undisposed of in the wife's hands at the termination of her estate. The clause is, " If she should marry again, then it is my will that all the estates herein bequeathed, or whatever may remain, shall go to my surviving children, share and share alike." The contention rests upon the words, " or whatever may remain," and is, that they imply that a part or all of the estate might be absolutely disposed of by the wife during her widowhood.

If the purpose of the testator in the disposition of his property is what the other parts of his will clearly indicate, then these words cannot be construed to change that purpose. They can have operation without giving them that effect. He was seised of real estate and possessed of personal property. Both were included in the devise to the wife, and she was to have the enjoyment of both during her widowhood. The use of many species of personal property necessarily consumes it. The words under consideration may, therefore, fairly be construed to refer to the personalty, and the entire clause to give to his children a remainder in the real estate, and whatever of the personalty was not consumed by the widow during her widowhood.

This construction is warranted by the language of this court in *Smith* v. *Bell* (*supra*), which was as follows : " This suit is brought for slaves, a species of property not consumed by the use and in which a remainder may be limited after a life-estate. They composed a part, and probably the most important part, of the personal estate given to the wife, ' to and for her own use and benefit and disposal absolutely.' But in this personal estate, according to the usual condition of persons in the situation of the testator, there were trifling and perishable articles, such as stock on a farm, household furniture, the crop of the year, which would be consumed in the use, and over which the

exercise of absolute ownership was necessary to a full enjoyment. These may have been in the mind of the testator when he employed the strong words of the bequest to her."

This passage shows that, in order to carry out the evident purpose of the testator, general words which are applicable to property of different kinds may be restricted to property of a particular kind. For instance, that the phrase "or whatever may remain," in the will under consideration, may be limited to personal property only, though used in a sentence which applies to both real and personal estate.

On this subject *Green* v. *Hewett*, decided by the Supreme Court of Illinois (12 Cent. Law Jour. 58), is precisely in point. The will in that case provided as follows: "*Second.* After payment of such debts and funeral expenses, I give and bequeath to my beloved wife the farm on which we now reside; also all my personal property of every description, so long as she remains my widow, at the expiration of that time the whole, or whatsoever remains, to descend to my daughter, M. T."

The court held that under this devise the widow did not take a fee, and said: "The use of that expression [whatsoever remains] is of no vital significance, and cannot be permitted to override the clearly expressed intention that the widow should take a life-estate only."

The next position of the defendants in error is, that even conceding that the will gives the widow of testator an estate for life, yet it conferred on her during her widowhood the power to convey the entire estate in fee, and she having so conveyed, the defendants in error who claim under her have a good title.

But the authorities are adverse, and show that when a power of disposal accompanies a bequest or devise of a life-estate, the power is limited to such disposition as a tenant for life can make, unless there are other words clearly indicating that a larger power is intended.

Thus, in *Brant* v. *Virginia Coal & Iron Co.* (93 U. S. 326), the words of the will were: "I give and bequeath to my beloved wife Nancy Sinclair all my estate, both real and personal; that is to say, all my lands, cattle, horses, sheep, farming

utensils, household and kitchen furniture, with everything that I possess, to have and to hold during her life, and to do with as she sees proper before her death."

By virtue of this power the widow undertook to convey the fee of the land. But this court, speaking by Mr. Justice Field, said: " The interest conveyed by the devise to the widow was only a life-estate. The language admits of no other conclusion; and the accompanying words, ' to do with as she sees proper before her death,' only conferred power to deal with the property in such manner as she might choose, consistently with that estate, and, perhaps, without liability for waste committed. The words used in connection with a conveyance of a leasehold estate would never be understood as conferring a power to sell the property so as to pass a greater estate. Whatever power of disposal the words confer is limited by the estate with which they are connected." See also *Bradley* v. *Wescott*, 13 Ves. Jr. 445; *Smith* v. *Bell, supra; Boyd* v. *Strahan*, 36 Ill. 355.

It is next insisted by the defendants in error that the statute of Nebraska, according to which the will must be construed, favors the construction contended for by them. The statute declares, " every devise of land, in any will hereafter made, shall be construed to convey all the estate of the devisor therein which he could lawfully devise, unless it shall appear by the will that the devisor intended to convey a less estate." General Statutes of Nebraska, sect. 124, c. 17. We are at a loss to see how the statute supports the view of one party to this suit more than the other. According to the construction of the plaintiff in error, the devise vested in the widow of the devisor a life-estate, remainder in fee to his children; according to the construction of defendants in error, it vested the fee in the widow. By either construction, the devise conveyed all the estate of the devisor in the property devised. This is all the statute demands.

Lastly, it is claimed by defendants in error that it is the settled rule that where a devisee, whose estate is undefined, is directed to pay debts, the devisee takes an estate in fee.

The rule has no application here, for, as we have seen, the estate of the devisee and executrix is clearly defined. A direc-

tion to pay debts cannot enlarge it. The case of *Smith* v. *Bell* (*supra*) is precisely in point against the application of the rule to this case.

We have no doubt about the true construction of this will. Edith J. Dawson took under it an estate for life in the testator's lands, subject to be divested on her ceasing to be his widow, with power to convey her qualified life-estate only. Her estate in the land and that of her grantees determined on her marriage with Pickering.

The judgment of the Circuit Court must, therefore, be reversed, and the cause remanded to that court, with directions to proceed in the case in conformity with this opinion; and it is

*So ordered.*