BILGER v. NUNAN et al.

(Circuit Court of Appeals, Ninth Circuit. September 4, 1912.)

No. 2,020.

1. MORTGAGES (§ 213*)—MORTGAGEE IN POSSESSION—EJECTMENT.

Under B. & C. Comp. Or. § 233, by which a mortgage of real estate is a lien only, the title and right of possession remaining in the mortgagor until his rights are foreclosed, a mortgagee in possession without foreclosure can defend an action of ejectment by one claiming under the mortgagor only where his possession is with the assent of the owner of the legal title, or through acts of such owner which create an estoppel.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 482–491; Dec. Dig. § 213.*]

2. WILLS (§ 439*)—CONSTRUCTION—RULES GOVERNING.

In the construction of a will, the first and paramount duty of the court is to ascertain from its terms, if possible, the intention of the testator.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 952, 955, 957; Dec. Dig. § 439.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. WILLS (§ 600*) — CONSTRUCTION — DEVISE OF REAL PROPERTY — OREGON STATUTE.

Testator devised and bequeathed all of his property, real and personal, to his wife, "to have, hold, use, and dispose of as she may see fit during her life, hereby giving her full power and authority to sell, convey, deed, and transfer all or any part of said property fully and absolutely, so as to pass complete title to purchasers or grantees from her as she may see fit." The will further provided that "whatever of my said property and the proceeds thereof" which should remain in the hands of his wife at her death should go to their daughters. Testator resided and owned real estate in Oregon, and by B. & C. Comp. Or. §§ 5336, 5573, it is provided that "the term 'heirs' or other words of inheritance shall not be necessary to create or convey an estate in fee simple," and that "a devise of real property shall be deemed and taken as a devise of all the estate or interest of the testator therein subject to his disposal, unless it clearly appears from the will that he intends to devise a less estate or interest." Held that, construing the will as required by such statutes, it conferred on testator's wife full power to sell or mortgage any of the real estate during her lifetime.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1335–1339; Dec. Dig. § 600.*]

4. WILLS (§ 747*)—ACTION BY DEVISEE—RIGHT OF POSSESSION.

A devisee of land in Oregon cannot maintain ejectment therefor while the estate is in process of administration in the county court and there is an acting executor or administrator de bonis non, who, under B. & C. Comp. Or. § 1147, is entitled to possession of the property, both real and personal, until the administration is completed or the land is surrendered to the devisees by order of the court.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1918–1933; Dec. Dig. § 747.*]

In Error to the Circuit Court of the United States for the District of Oregon.

Action at law by Sallie Bilger against Jeremiah Nunan and O. Harbaugh. Judgment for defendants, and plaintiff brings error. Affirmed.

For opinion below, see 186 Fed. 665.

This is an action in ejectment, brought by Sallie Bilger to recover possession of an undivided one-sixth interest in and to a tract of land in Jackson county, Or., described as containing 292 acres, but excepting therefrom a small tract of 3 acres deeded to a third party, with respect to which there is no issue. Plaintiff is the daughter of James A. Cardwell, deceased, and claims title and right of possession under a will executed by him February 18, 1890. The defendant Jeremiah Nunan claims title and right of possession: (a) By virtue of a sheriff's deed to defendant, executed in pursuance of a decree and order of sale obtained under the foreclosure of a mortgage executed by Caroline Cardwell, the widow of James A. Cardwell, upon the real property in controversy. (b) By the right of a mortgagee in possession. The defendant Harbaugh claims no right, title, or interest in the premises other than that of a tenant under the defendant Nunan.

J. A. Cardwell, a resident of Jackson county, state of Oregon, died at Jacksonville, Or., on the 16th day of April, 1890, leaving an estate of real and personal property, shown by the inventory and appraisement to be of the value of $17,500, of which the personal property was appraised at $2,500, and the real property at $15,000. The real property is the subject of this litigation. At the time of his death Cardwell left his last will and testament as follows:

"I, James A. Cardwell, of Jackson county, state of Oregon, being of sound and disposing mind and not under any restraint whatever, do make, publish

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and declare this my last will and testament, namely, I give, devise, and bequeath to my wife, Caroline Cardwell, all of my property and estate, both real and personal, of every kind of which I shall die possessed, to have, hold, use and dispose of as she may see fit during her life, hereby giving her full power and authority to sell, convey, deed and transfer all or any part of said property fully and absolutely so as to pass complete title to purchasers or grantees from her as she may see fit.

"And it is my will that whatever of my said property and the proceeds thereof which remains in the hands of said Caroline Cardwell at her death shall go to our daughters, hereinafter named.

"On account of our daughter Medora L. Berry and her husband having heretofore left some property with me which entitles her to more of my estate than the others it is my will that she shall receive, out of what remains undisposed of at the death of my wife, the sum of two hundred and fifty dollars, and the rest of whatever so remains shall be divided equally among my daughters Medora L. Berry, Maria Kahler, Sallie Bilger, Della Fink, Rose Cardwell and Laura Cardwell, share and share alike.

"And inasmuch as my sons, Alvin B. Cardwell, C. D. Cardwell and Wm. W. Cardwell, have already received advancements and pecuniary assistance from me equal to their shares of my estate, they are not to receive any portion of my estate under this will."

This will was duly proved and admitted to probate, and Caroline Cardwell was duly appointed (on June 9, 1890) the executrix, and on June 27th qualified as such executrix and entered upon the discharge of her trust, and during her lifetime acted as such executrix. At the time of the death of James A. Cardwell he was indebted to defendant Jeremiah Nunan, for goods, wares. and merchandise furnished for and used by Cardwell and his family, in the sum of about $759.99. In the semiannual account of the executrix, showing the claims that had been presented against the estate, was the claim of Nunan for the sum of $759.99. This report was received by the court and approved on February 22, 1892. Subsequently Nunan furnished the executrix, at her instance and request, other goods, wares, and merchandise aggregating the additional sum of about $541.42, and on February 8, 1892, the claim of Nunan aggregated the value of $1,301.41, including the pre-existing claim so presented by him against the estate and allowed by the court. Caroline Cardwell thereupon gave her promissory note to Nunan to cover this indebtedness, and at the same time executed and delivered to Nunan a mortgage upon the real estate in controversy, which mortgage was duly acknowledged and recorded in the office of the county recorder for Jackson county.

Thereafter, this promissory note having become due and being wholly unpaid, principal and interest. Nunan, on March 16, 1894, commenced a suit in the circuit court of the state of Oregon for Jackson county for the foreclosure of the mortgage, by filing his complaint therein. On September 25, 1894, a decree of foreclosure and judgment was duly entered in said court against Caroline Cardwell in favor of Nunan for the sum of $1,657.12. On September 28, 1894, execution was issued, and on October 3, 1894, the sheriff made a levy and seizure of the land and premises described in the complaint, and on November 3, 1894, the property was sold and bid in by defendant Nunan. This sale was confirmed, and sheriff's deed executed and delivered to Nunan on April 15, 1895, and ever since the execution and sale he has been in the undisputed and absolute possession of the premises, except a small tract conveyed to a third party, with respect to which there is no issue.

Prior to any of the transactions heretofore mentioned, and on the 8th day of March, 1884, Cardwell and his wife, for a valuable consideration, executed and delivered to the Board of Commissioners for the sale of school and university lands, and for the investment of the funds arising therefrom, a mortgage conveying the premises in controversy, and certain other property owned by the said Cardwell, to secure the payment of a certain promissory note, dated March 8, 1884, for the sum of $4,160, payable one year after date to the said Board of Commissioners, with interest thereon at the rate of 8 per cent. per annum until paid. This mortgage was duly acknowledged and recorded as required by law. On February 12, 1895, no portion of the principal or interest of said note and mortgage having been paid, and the whole

sum being fully due and owing, the defendant Nunan, for the purpose of protecting his rights and interests in said premises, paid said note, in the sum of $4,160 and interest, making in all the sum of $5,189.82, and obtained a release of said mortgage, duly executed by the said Board of Commissioners.

On March 26, 1896, Caroline Cardwell died, leaving the estate unsettled. Thereafter the plaintiff in error here (being one of six heirs at law of James A. Cardwell) and other residuary legatees under the will brought separate actions in ejectment to recover the property in controversy.

On March 18, 1910, the complaint in this action was filed in the Circuit Court of the United States for the District of Oregon by Sallie Bilger, alleging, among other things, that plaintiff was a citizen and resident of, and domiciled in, the state of Washington; that defendants were citizens and residents of, and domiciled in, the state of Oregon; that plaintiff was, and had been for more than six years prior thereto, the absolute owner in fee simple of an undivided one-sixth of, in, and to the property in dispute; that defendants wrongfully withhold, and had continuously for more than six years prior to that time wrongfully withheld, the real estate of plaintiff, and the possession of the whole and every part of said property from plaintiff; that the value of the rents, issues, and profits of this property during the period of six years, and damages for the wrongful withholding of the possession from plaintiff during that time, amounted to the sum of $5,000, and defendants refused and neglected to pay any part of this to plaintiff. Plaintiff demanded judgment that she was the absolute owner in fee simple of an undivided one-sixth of, in, and to the property, that she was entitled to the immediate possession of the whole of said real property, and that she have and recover from defendants the possession of the same, and the sum of $5,000 damages, and for costs.

An answer was filed by Jeremiah Nunan, defendant, on April 20, 1910, and an amended answer on October 4, 1910. The answer, as amended, contained a general denial of the allegations of the complaint, set up fee-simple title and right of possession in defendant in error, and pleaded the statute of limitations, the making of permanent betterments, improvements on said lands, at a cost of $1,617, the payment of all taxes, amounting to $1,916.33, the holding of possession of the premises under the judgment entered upon the mortgage foreclosure, and payment of the principal and interest of the prior school and university mortgage, amounting to $5,189.82, heretofore referred to, and that defendant in error was a mortgagee in possession.

The cause was tried before the court without a jury. Findings of fact and conclusions of law were filed May 29, 1911, and judgment was entered the same date, in which it was adjudged that plaintiff was not entitled to the possession of the premises described in the complaint, but that defendant Nunan was the owner in fee simple and entitled to the exclusive possession of all of said premises, except a certain conveyed portion. The case is brought to this court by writ of error to reverse the decision of the Circuit Court for the District of Oregon.

W. E. Crews, of Medford, Or., James E. Fenton, of San Francisco, Cal., and W. W. Cardwell, of Medford, Or., for plaintiff in error.

H. D. Norton, of Grants Pass, Or., and Dolph, Mallory, Simon & Gearin, of Portland, Or., for defendants in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). [1] It is contended on behalf of the defendant in error that he is a mortgagee in possession, and that he can hold his possession until his debt is paid. This right of possession by the mortgagee, when interposed as a defense to an action of ejectment, brought by one claiming the right of possession under the mortgagor, is necessarily dependent upon the question whether the mortgagor had title to the premises. "An

action of ejectment involves both the right of possession and the right of property." Coles v. Meskimen, 48 Or. 54, 56, 85 Pac. 67, 68. If the mortgagor had no right of property, then the mortgagee could acquire no right of possession under the mortgage. A mortgage of real estate under the law of Oregon, as in many states of the Union, is a mere lien, and does not convey the legal title. The mortgagor retains the legal title as well as the possession. Section 233, B. & C. Codes & Statutes of Oregon. Hence it follows that in that state the possession of the mortgaged premises obtained by the mortgagee with the assent of the mortgagor—the mortgagor having the right of property—is a good defense to an action of ejectment by the latter so long as the mortgage debt remains unpaid. Roberts v. Sutherlin, 4 Or. 219; Cooke v. Cooper, 18 Or. 142, 22 Pac. 945, 7 L. R. A. 273, 17 Am. St. Rep. 709; Coles v. Meskimen, supra. The assent of the mortgagor in such a case is the application of the law of estoppel, and this is a good defense in Oregon to an action of ejectment in both the federal and state courts. Coles v. Meskimen, supra; Dickerson v. Colgrove, 100 U. S. 578, 25 L. Ed. 618; Kirk v. Hamilton, 100 U. S. 68, 26 L. Ed. 79.

The defendant in error entered in possession of the lands in controversy by virtue of the foreclosure proceedings and decree in the action of Jeremiah Nunan v. Caroline Cardwell. Whether Caroline Cardwell, the mortgagor, had the right of property when she executed the mortgage, is the controlling question in the case, and this question is to be determined by examination of the will of James A. Cardwell, deceased, under which Caroline Cardwell claimed title to the property. At the time Nunan obtained possession of the land by purchase at the sale in the foreclosure proceedings, there was outstanding a promissory note executed by James A. Cardwell on the 8th of March, 1884, for the sum of $4,160 to the Board of Commissioners for the sale of school and university lands in the state of Oregon. There was also outstanding a mortgage of the same date, executed by James A. Cardwell, to secure the payment of the promissory note and covering the lands in controversy. The note and mortgage were outstanding when Cardwell died on April 6, 1890, when the mortgaged premises passed with the other property to the devisee or devisees under his will. The school and university mortgage was still outstanding when Nunan took possession of the land on November 3, 1884, under the foreclosure sale.

On November 12, 1895, Nunan paid the school and university note and mortgage, and the court below found as a fact that he thereby became subrogated to the rights of the mortgagee under the mortgage. What were the rights of the mortgagee? The mortgage being due and unpaid, it had the right to foreclose the mortgage and have the property sold to pay the debt for which the mortgage was given as security. It also had the right to bid in the property in the foreclosure sale for the amount of the debt, if a better price could not be obtained. Nunan, subrogated to the rights of the mortgagee, did not exercise the right of foreclosure with respect to this mortgage. The mortgage was

not foreclosed. No sale was made, and there was no transfer of title. Nunan, therefore, acquired no right of possession under that mortgage. The right of property with respect to this mortgage remained in the mortgagor, and passed to the devisee or devisees under the Cardwell will; and as with respect to the Nunan mortgage, so with respect to this mortgage, we must now look to the will to ascertain the right of possession to the lands in controversy.

It is contended by the plaintiff in error that under the will Caroline Cardwell took a life estate only, that her mortgage of the title in fee to Nunan was void, that plaintiff in error, on the death of Caroline Cardwell in March, 1896, being one of the devisees of the remainder of the estate, became the absolute owner in fee of an undivided one-sixth of the property, and by reason of that ownership is now entitled to the possession of the same. The defendant in error contends, on the other hand, that the devise to Caroline Cardwell was an absolute title in fee, that the mortgage by her of the fee was valid, and that under the sale in the foreclosure proceedings the title was vested in the defendant in error, and that he is now entitled to retain the possession of the same.

[2] In the construction of a will the first and paramount duty of the court is to ascertain from its terms, if possible, the intention of the testator. It was said by Chief Justice Marshall in Smith v. Bell, 6 Pet. 68, 74 (8 L. Ed. 322):

"The first and great rule in the exposition of wills, to which all other rules must bend, is that the intention of the testator, expressed in his will, shall prevail, provided it be consistent with the rules of law. 1 Doug. 322; 1 W. Bl. 672. This principle is generally asserted in the construction of every testamentary disposition. It is emphatically the will of the person who makes it, and is defined to be 'the legal declaration of the man's intentions, which he wills to be performed after his death.' 2 Bl. Com. 499. These intentions are to be collected from his words, and ought to be carried into effect, if they be consistent with law."

The court then proceeds to state other rules which should not be disregarded. It says:

"In the construction of ambiguous expressions, the situation of the parties may very properly be taken into view. The ties which connect the testator with his legatees, the affection subsisting between them, the motives which may reasonably be supposed to operate with him, and to influence him in the disposition of his property, are all entitled to consideration, in expounding doubtful words, and ascertaining the meaning in which the testator used them. No rule is better settled than that the whole will is to be taken together, and is to be so construed as to give effect, if possible, to the whole. * * * Notwithstanding the reasonableness and good sense of this general rule, that the intention shall prevail, it has been sometimes disregarded. If the testator attempts to effect that which the law forbids, his will must yield to the rules of law. But courts have sometimes gone farther. The construction put upon words in one will has been supposed to furnish a rule for construing the same words in other wills, and thereby to furnish some settled and fixed rules of construction, which ought to be respected. We cannot say that this principle ought to be totally disregarded; but it should never be carried so far as to defeat the plain intent, if that intent may be carried into execution, without violating the rules of law. It has been said truly (3 Wils. 141) 'that cases on wills may guide us to general rules of construction; but, unless a case cited be in every respect directly in point, and agree

in every circumstance, it will have little or no weight with the court, who always looks upon the intention of the testator as the polar star to direct them in the construction of wills.'"

Applying these rules to the construction of the will before the court in that case, it was determined that the will vested a life estate only in the wife, and the remainder over to the son. The case is one of the cases relied on by the plaintiff in error in the present case as an authority for the construction of the Cardwell will, that the devise to Caroline Cardwell was a life estate only, with a remainder over to her children. The property involved in the case of Smith v. Bell was personal property, and consisted of five slaves. There was no real estate. The case arose in Tennessee, where the personal property of the wife became the property of the husband, if reduced to possession. Under the rule that had been stated by the court, that in the construction of ambiguous expressions the situation of the parties might very properly be taken into view, and the ties which connect the testator with his legatees be considered, the court, referring to this situation and relationship, said:

"No principle in our nature could prompt him to give his property to the future husband of his wife, to the exclusion of his only child."

This was a plain, simple, and natural reason why the testator's devise of his personal property to his wife, "to and for her own use and benefit and disposal, absolutely, the remainder of said estate, after his decease, to be for the use of the said Jesse Goodwin," should be construed as a life estate only to his wife, and the remainder in fee to his only child. But we do not find any such situation in the present case, and no reason of that character calling for a similar construction of the will before this court. It follows that another of the fundamental rules stated by Chief Justice Marshall should be observed in considering the value of this as well as other cited cases, namely, that:

"Unless a case cited be in every respect directly in point, and agree in every circumstance, it will have little or no weight with the court, who always looks upon the intention of the testator as the polar star to direct them in the construction of wills."

[3] The plaintiff in error also invokes a statutory rule of construction provided in the laws of Oregon (section 7343, Lord's Oregon Laws; section 5572, Bellinger & Cotton's Codes and Statutes of Oregon) as follows:

"If any person by last will devise any real estate to any person for the term of such person's life, and after his death, to his or her children or heirs, or right heirs in fee, such devise shall vest an estate for life only in such devisee, and remainder in fee simple in such children."

The defendant in error invokes a provision of the statute law of Oregon (section 7103, Lord's Oregon Laws; section 5336, B. & C. Codes and Statutes of Oregon) as follows:

"The term 'heirs' or other words of inheritance shall not be necessary to create or convey an estate in fee simple; and any conveyance of any real

estate hereafter executed shall pass all the estate of the grantor unless the intention to pass a less estate shall appear by express terms or be necessarily implied in the terms of the grant."

He also invokes a statutory rule of construction provided in the same laws (section 7344, Lord's Oregon Laws; section 5573, B. & C. Codes and Statutes of Oregon) as follows:

"A devise of real property shall be deemed and taken as a devise of all the estate or interest of the testator therein subject to his disposal, unless it clearly appears from the will that he intends to devise a less estate or interest."

These rules of construction and modification of the common law must be construed together, and, being so construed, we have no difficulty in understanding that where it is claimed, as, for example, in this case, that the testator had devised by will an estate or interest in real property for life only, and this estate or interest was less than the estate he had subject to his disposal in such real property, it must clearly appear from the will that he intended to devise such less estate or interest. It is conceded that James A. Cardwell, the testator in this case, had a fee-simple title to the real property in controversy at the time of the execution of the will and at the time of his death. This brings us to the consideration of the controlling question in this case:

What did Cardwell intend to do with his estate? Did he intend to devise to his wife, Caroline Cardwell, less than a fee-simple estate? Referring to his will, we find his devise in the following terms:

"I give, devise, and bequeath to my wife, Caroline Cardwell, all my property and estate, both real and personal, of every kind of which I shall die possessed, to have, hold, use and dispose of as she may see fit during her life, hereby giving her full power and authority to sell, convey, deed and transfer all or any part of said property fully and absolutely so as to pass complete title to purchasers or grantees from her as she may see fit.

"And it is my will that whatever of my said property and the proceeds thereof which remains in the hands of said Caroline Cardwell at her death shall go to our daughters, hereinafter named.

"On account of our daughter Medora L. Berry and her husband having heretofore left some property with me which entitles her to more of my estate than the others, it is my will that she shall receive, out of what remains undisposed of at the death of my wife, the sum of two hundred and fifty dollars, and the rest of whatever so remains shall be divided equally among my daughters Medora L. Berry, Maria Kahler, Sallie Bilger, Della Fink, Rose Cardwell and Laura Cardwell, share and share alike.

"And inasmuch as my sons Alvin B. Cardwell, C. D. Cardwell and Wm. W. Cardwell have already received advancements and pecuniary assistance from me equal to their shares of my estate, they are not to receive any portion of my estate under this will."

It must be admitted that the intention to pass only a life estate to the widow does not clearly or distinctly appear in the will in express terms. We must, therefore, dismiss that provision of the statute from consideration as a ground for holding that a life estate only was intended. We then have this question to deal with: Is such an estate necessarily implied by the terms of the will? The first clause of the will is a gift, devise, and bequest to

the widow of all the testator's property and estate, both real and personal, of every kind of which he shall die possessed. These words do not necessarily or at all imply the granting of a life estate. On the contrary, they not only do not imply the grant of a life estate, but they clearly and distinctly grant the whole estate at the disposal of the testator at the time of his death, namely, an estate in fee. But the controversy is with respect to the words that follow:

"To have, hold, use and dispose of as she may see fit during her life."

Do these words necessarily imply a life estate? Standing alone, they are, perhaps, susceptible of that interpretation; but, construed with the words that follow, that does not appear to be a satisfactory interpretation. The testator provides:

"Hereby giving her full power and authority to sell, convey, deed and transfer all or any part of said property fully and absolutely so as to pass complete title to purchasers or grantees from her as she may see fit."

Here we have a grant of the full and unlimited power of alienation, which is only consistent with the granting of an estate in fee, and this grant is entirely consistent with the terms of the previous clause when so construed; so that, taking the whole paragraph together, there is a clear and distinct expression on the part of the testator that he intended to grant to his widow an estate in fee.

The next paragraph is equally consistent with his intention. He provides:

"That whatever of my said property and the proceeds thereof which remains in the hands of said Caroline Cardwell at her death shall go to our daughters."

These daughters were not to have all the property or the whole estate after a technical life estate had been enjoyed by the widow, but whatever property and the proceeds thereof remained in her hands at her death; that is to say, whatever property or estate or proceeds not disposed of by her during her lifetime should go to the daughters. This provision of the will, dealing not only with the property undisposed of, but with the "proceeds" of property sold, is manifestly inconsistent with any other intention than the devise to the widow of an absolute estate in fee simple. It was the "power and authority to sell, convey, deed and transfer all or any part of said property fully and absolutely," as provided in the first clause of the will, that made it consistent with the testator's purpose to provide for the disposition of whatever of the property or proceeds which might remain unsold and undisposed of at the time of the death of the widow.

This consistent purpose is maintained in the next clause of the will, where it is provided that, on account of the daughter Medora and her husband having left some property with the testator, which entitles her to more of the estate than the others, she is to receive "out of what remains undisposed of at the death of my wife the

sum of two hundred and fifty dollars," and, repeating the provision of the previous clause concerning the daughters, he provides:

"And the rest of whatever so remains shall be divided equally among my daughters."

We find, then, in each and all of the paragraphs of this will the clearly expressed intention of the testator, as declared in the first clause of the will, to give to the wife all his property and estate, both real and personal, of any kind of which he shall die possessed; that is to say, an estate in fee simple.

There are numerous cases in the books involving the construction of wills where the conditions were substantially the same as in this case; but we do not deem it necessary to review those cases and discuss the various questions entering into the application of common-law rules or statutory provisions in their construction. We think that an examination of one case referred to by the court below is sufficient authority to establish the correctness of the construction we place on the provisions of this will. The case referred to is that of Roberts v. Lewis, 153 U. S. 367, 14 Sup. Ct. 945, 38 L. Ed. 747. But to understand this case fully the preceding cases of Giles v. Little (C. C.) 13 Fed. 100, Giles v. Little, 104 U. S. 291, 26 L. Ed. 745, and Little v. Giles, 25 Neb. 313, 41 N. W. 186, should be considered, and the decisions in those cases kept in view.

In the case of Roberts v. Lewis a statute of Nebraska in substantially the same terms as that of Oregon was finally held by the Supreme Court of the United States to be controlling in the construction of a will, and making it clear that the widow in that case took an estate in fee. The provisions of the will in that case were similar to those of this case. They provided:

"To my beloved wife, Edith J. Dawson, I give and bequeath all my estate, real and personal, of which I may die seised, the same to remain and be hers, with full power, right and authority to dispose of the same as to her shall seem meet and proper, as long as she shall remain my widow."

In Giles v. Little (C. C.) 13 Fed. 100, Judge McCrary, of the United States Circuit Court for the District of Nebraska, held that the statute of Nebraska required that this will should be construed as disposing of the whole estate. In Giles v. Little, 104 U. S. 291, 26 L. Ed. 745, the Supreme Court of the United States reversed the decision of Judge McCrary, holding that by the true construction of the will the widow took under it an estate for life in the testator's lands, subject to be devised on her ceasing to be his widow, with power to convey her qualified life estate only. In the subsequent case of Little v. Giles, 25 Neb. 313, 41 N. W. 186, the Supreme Court of that state refused to follow the decision of the Supreme Court of the United States, giving the following reasons for such refusal:

"The will in question was construed by the Supreme Court of the United States in Giles v. Little, 104 U. S. 291, 26 L. Ed. 745, and it was held that the will merely conferred an estate upon Edith Dawson during her widowhood, and, in case she married again, the remainder in fee passed to her children. The words in the will, 'or whatever may remain,' were construed as apply-

ing alone to the personal estate, and did not affect the realty. The decision is based on the prior one of Smith v. Bell, 6 Pet. 68, 8 L. Ed. 322. At common law, in order to devise lands to another in fee, it was necessary to use words of inheritance, or equivalent words, showing an intention to give such estate; and a mere devise of real estate without words of inheritance gave the devisee only a life estate. 'The power and technical mode of limiting an estate in fee simple is to give the property to the devisee and his heirs, or to him, his heirs and assigns, forever; but such an estate may, even under a will made before 1838, be created by any expression, however informal, which denotes the intention.' Section 3, Jarm. Wills (5th Am. Ed.) 30 et seq.; Dew v. Kuehn, 64 Wis. 293, 25 N. W. 215. The presumption at common law is that only a life estate was intended to be devised, unless words of inheritance or words of like import were used. The construction of the will in question by the United States Supreme Court, under the common law, had that controlled the case, therefore, no doubt, was correct. The common-law rule, however, has been changed in this state in two important particulars: First, 'the term "heirs," or other technical words of inheritance, shall not be necessary to create or convey an estate in fee simple' (Comp. St. c. 73, § 49); and, second, 'every devise of land in any will hereafter made shall be construed to convey all the estate of the devisor therein which he could lawfully devise, unless it shall clearly appear by the will that the devisor intended to convey a less estate' (Id. c. 23, § 124). The first of these sections is not referred to in the opinion of the United States Supreme Court, and probably the court's attention was not called to it, and the latter section was by mistake, no doubt, copied incorrectly; the word 'clearly' being omitted. Giles v. Little, 104 U. S. 299, 26 L. Ed. 745. Mr. Justice Woods, therefore, in writing the opinion, gave no weight to the section whatever. The section of the statute in question was copied from the statute of Michigan, and its proper construction was before that court in Weir v. Stove Co., 44 Mich. 506, 7 N. W. 78; Chambers v. Shaw, 52 Mich. 18, 17 N. W. 223."

The court, after referring to similar bequests in other cases and the construction of such bequests by the courts under statutes of substantially the same character, reached the conclusion that the will in question empowered his widow to convey all of his real and personal estate, if she saw fit to do so, and as she had exercised this right and power after the death of the testator and before her remarriage, the grantees under her deeds acquired all the title of the testator to such lands.

In Roberts v. Lewis, 153 U. S. 367, 14 Sup. Ct. 945, 38 L. Ed. 747, the Supreme Court of the United States had before it certain questions certified to it by the Circuit Court of Appeals for the Eighth Circuit, arising out of a question of title held by Lewis, the grantee of Giles, the plaintiff in Giles v. Little in the federal courts, and one of the defendants in Little v. Giles in the state courts. In this case the Supreme Court overruled its former decision in the case of Giles v. Little, 104 U. S. 291, 26 L. Ed. 745, and followed the decree of the Supreme Court of Nebraska in Little v. Giles, 25 Neb. 313, 41 N. W. 186. Referring to the latter case the Supreme Court of the United States said:

"The opinion of the Supreme Court of the state appears to have been formed upon full consideration of the difficulties of the case, and is entitled to great weight, especially upon the construction of the statute of the state. Suydam v. Williamson, 24 How. 427, 16 L. Ed. 742. And this court, on reconsideration of the whole matter, with the aid of the various judicial opinions upon the subject, and of the learned briefs of counsel, is of opinion that the sound construction of this will, as to the extent of the power conferred on the widow, is in accordance with the conclusion of the state court, and

not with the former decision of this court, which must, therefore, be considered as overruled."

Referring to the will the court said:

"The testator's primary object manifestly was to provide for his widow. He begins by giving her 'all my estate, real and personal,' which of itself would carry a fee, unless restricted by other words. Lambert v. Paine, 3 Cranch, 97, 2 L. Ed. 377. He then says, 'to be and remain hers,' which, upon any possible construction, secures to her the full use and enjoyment of the estate, while she holds it. She is also vested, in the most comprehensive terms, 'with full power, right and authority to dispose of the same' (which, as no less title has as yet been mentioned, naturally means the whole estate) 'as to her shall seem most meet and proper, so long as she shall remain my widow.' This last clause, so far as it controls the previous words, has full effect if construed as limiting the time during which the widow may have the use and enjoyment of the estate, and the power to dispose of it, and not restricting the subject to be disposed of. The power thus conferred, therefore, in its own terms, as well as by the general intent of the testator, gives her during widowhood the right to sell and convey an absolute title in any part of the estate; for it would be difficult, if not impossible, to obtain an adequate price for a title liable to be defeated in the hands of the purchaser by the widow's marrying again. That the power was intended to be unlimited in this respect appears, even more distinctly, by the terms of the next clause, by which, if she should marry again, the testator declares it to be his will that 'all of the estate herein bequeathed, or whatever may remain, should go' to his surviving children. By not using the technical word 're-mainder,' or making the devise over include the entire estate at all events, but carefully adding, after the words 'all the estate herein bequeathed,' the alternative 'or whatever may remain' (which would otherwise have no meaning), he clearly manifests his intention to restrict the estate given to the children to whatever has not been disposed of by the widow; and there is nothing upon the face of the will, nor are there any intrinsic facts in this record, having any tendency to show that the power of the widow is less absolute over the real estate than over the personal property."

We think this case disposes of the whole question in controversy respecting the character of the estate devised, including the contention of the plaintiff in error that, though this court should hold that the widow was given the power to sell or convey, it does not follow that she could mortgage it. We hold that she was given the entire fee, and the recital of the power to deal with the property in full and absolute terms was simply a method of describing the quantity of a fee-simple title.

[4] It is next contended by the plaintiff in error that the widow could not sell or mortgage the land in controversy at the time and in the manner she did, for the reason that the estate was then pending in the county court, which, under the Constitution of the state of Oregon, is a court of superior and general jurisdiction in probate matters; that no order was ever made by the county court for the sale or mortgage of the property belonging to the estate; and that the defendant Nunan never took any proceedings to obtain an order for the sale of any real or personal property belonging to the estate to satisfy and pay his claim. It appears from the record that the last order made in the estate of Cardwell, while his widow was executrix, was made on April 18, 1892, when a claim in no way connected with this controversy was ordered paid. Mrs. Cardwell died in March, 1896, but no proceedings were taken

in the county court with respect to the Cardwell estate until February 15, 1910, when. upon petition of plaintiff and the other daughters of Cardwell, S. B. Hanly was appointed administrator de bonis non. The complaint in this case was filed in the United States Circuit Court on March 18, 1910. The presumption is that Hanly was at that time the duly qualified and acting administrator of the estate, and that under the statute of the state of Oregon he was entitled to the possession and control of the property. Section 1185, Lord's Oregon Laws (section 1147, B. & C. Codes and Statutes of Oregon), provide as follows:

"The executor or administrator is entitled to the possession and control of the property of the deceased, both real and personal, and to receive the rents and profits thereof until the administration is completed or the same is surrendered to the heirs or devisees by order of the court or judge thereof. * * *"

There is testimony in the record that there are debts of the estate unpaid, and that the estate remains unsettled and unclosed. In this situation of the estate. we do not see how the plaintiff can in any view of the proceedings maintain her suit in ejectment for the land in controversy.

The judgment of the court below is affirmed.